United States District Court
Southern District of Texas
**ENTERED**
March 24, 2025
Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| Javion D. W., § § § *Plaintiff*, § § v. § § Martin O'Malley, § Commissioner of Social Security § Administration,[1] § § *Defendant*. § | Case No. 4:23-cv-03936 |

# **MEMORANDUM AND ORDER**

This is an appeal from an administrative ruling denying disability benefits. The case was transferred to the undersigned judge upon consent of the parties. Dkt. 8. After carefully considering the parties' briefs, Dkt. 9, 11, 12, the administrative record, Dkt. 7, and the applicable law, the Court concludes that the Commissioner of Social Security's decision must be vacated and that this matter should be remanded for further administrative proceedings.

---

[1] The Court is aware that O'Malley resigned, and Leland Dudek is the current Acting Commissioner of Social Security. But no request to substitute Dudek as Defendant has been made.

## Background

Plaintiff filed for social security benefits under Title II and for supplemental security income under Title XVI on January 9, 2021. *See* R.76-77, 228-29. In both applications, Plaintiff alleged an onset date of October 21, 2020, due to schizophrenia and bipolar disorder. *See id.* Plaintiff's applications were denied initially, R.102, 107, and upon reconsideration, R.119, 124. Subsequently, Plaintiff requested a hearing before an administrative law judge ("ALJ"). R.127.

Following the hearing, the ALJ issued an opinion concluding that Plaintiff is not disabled. R.20-33. The ALJ first found that Plaintiff met the insured status requirements and had not engaged in substantial gainful activity since October 21, 2020. R.23. Next, the ALJ found that Plaintiff had severe impairments: schizophrenia spectrum disorder and affective mood disorder. *Id.* But the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of any listed impairment in 20 C.F.R. Pt. 404, Subpt. P, App'x 1. R.25.

The ALJ then determined that Plaintiff had a residual functional capacity ("RFC") to perform a full range of work at all exertional levels, subject to certain non-exertional limitations:

> Mentally, the claimant can understand, remember and carry out detailed and simple tasks, but no complex tasks. Further, due to the claimant's social limitations he should never be required to

> have more than only occasional interactions with the public, coworkers and supervisors. In addition, due to the claimant's adaptational and self-management limitations, including his limitations in managing stress, he should never be subjected to more than occasional changes in the work setting, or be required to make plans or set goals independently of others, or be required to work at a forced pace or an assembly line pace.

R.27.

In reaching this determination, the ALJ assessed Plaintiff's testimony about his symptoms, R.28-29, and deemed unpersuasive a psychological consultative examiner's opinion that Plaintiff's mental impairments had more severe impacts on Plaintiff's ability to work, R.30 (addressing Ex. 4F, R.374-78). The ALJ also found persuasive the opinions of state medical examiners but did not adopt all their proposed restrictions, concluding that the objective medical evidence best supported the above RFC. *See* R.30 (citing Exs. 1A, 4A, 7A, and 8A, R.69-75, 78-84, 87-93, 94-100).

Given this RFC, the ALJ determined that Plaintiff could not perform past relevant work as a material handler. R.31. Based on a vocational expert's testimony, however, the ALJ found that Plaintiff could still perform unskilled work available in the national economy as a laundry worker, hand packager, and day worker (i.e., house cleaner). R.32.

Plaintiff appealed the determination to the Social Security Appeals Council, which denied review. *See* R.7. This appeal followed. Dkt. 1.

## **Legal standard**

This Court reviews the Commissioner's denial of social security benefits "only to ascertain whether (1) the final decision is supported by substantial evidence and (2) whether the Commissioner used the proper legal standards to evaluate the evidence." *Whitehead v. Colvin*, 820 F.3d 776, 779 (5th Cir. 2016) (per curiam) (quotation omitted). "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). It is "more than a scintilla, but it need not be a preponderance." *Taylor v. Astrue*, 706 F.3d 600, 602 (5th Cir. 2012) (per curiam) (quotation omitted).

When conducting its review, the Court cannot reweigh the evidence or substitute its judgment for the Commissioner's. *Brown v. Apfel*, 192 F.3d 492, 496 (5th Cir. 1999). "Conflicts of evidence are for the Commissioner, not the courts, to resolve." *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005). But judicial review must not be "so obsequious as to be meaningless." *Brown*, 192 F.3d at 496 (quotation omitted). The Court must scrutinize the record as a whole, taking into account whatever fairly detracts from the weight of evidence supporting the Commissioner's findings. *Singletary v. Bowen*, 798 F.2d 818, 823 (5th Cir. 1986).

## Analysis

**I.     Legal framework**

"The Commissioner uses a sequential, five-step approach to determine whether a claimant is … disabled: (1) whether the claimant is presently performing substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the impairment meets or equals a listed impairment; (4) whether the impairment prevents the claimant from doing past relevant work; and (5) whether the impairment prevents the claimant from performing any other substantial gainful activity." *Morgan v. Colvin*, 803 F.3d 773, 776 (5th Cir. 2015) (citing 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4)) (footnote omitted).  Before moving from step three to four, the ALJ determines the claimant's RFC, which is used to evaluate steps four and five. *Id.* at 776 n.2 (quoting 20 C.F.R. § 404.1520(a)(4)).

"Under this five-step approach, if the Commissioner determines at a prior step that the applicant is or is not disabled, the evaluation process stops …." *Id.* at 776 (citing 20 C.F.R. § 404.1520(a)(4)). The claimant bears the burden of proof at the first four steps. *Kneeland v. Berryhill*, 850 F.3d 749, 753 (5th Cir. 2017). At the fifth step, the burden of proof shifts to the Commissioner "to establish the existence of other available substantial gainful employment that a claimant can perform." *Id.* at 753-54. The Commissioner fulfills this burden by identifying potential alternative employment that exists in

5

significant numbers in the national economy. *See Fraga v. Bowen*, 810 F.2d 1296, 1302 (5th Cir. 1987); 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1566(a). The burden then "shifts back to the claimant to prove that he is unable to perform the alternate work." *Fraga*, 810 F.2d at 1302.

## II.   The RFC is unsupported by substantial evidence.

Plaintiff mounts two challenges to the RFC, arguing that (1) the ALJ failed to properly evaluate the medical opinions, and (2) the ALJ improperly relied on his own lay opinion to conclude that Plaintiff's hallucinations did not merit further restrictions. *See* Dkt. 9 at 19-20. The Commissioner counters that the ALJ appropriately evaluated the medical opinions, and substantial evidence supports the RFC. *See generally* Dkt. 11.

### A.   The RFC

The RFC is a predicate to steps four and five that determines "the most the claimant can still do despite his [or her] physical and mental limitations and is based on all relevant evidence in the claimant's record." *Kneeland*, 850 F.3d at 754 (quoting *Perez*, 415 F.3d at 461-62). "The ALJ is responsible for determining an applicant's [RFC]." *Ripley v. Chater*, 67 F.3d 552, 557 (5th Cir. 1995) (citing 20 C.F.R. § 404.1546). In doing so, the ALJ examines "all the relevant evidence in [an applicant's] case record." 20 C.F.R. § 404.1545(a)(1); *Webster v. Kijakazi*, 19 F.4th 715, 718 (5th Cir. 2021). "The ALJ is not required to incorporate limitations in the RFC that [he] did not find to be supported by

6

the record." *Lyles v. Kijakazi*, 2023 WL 6279903, at *7 (S.D. Tex. Sept. 26, 2023) (quotation omitted).

When determining the RFC, the ALJ must evaluate the persuasiveness of "all of the medical opinions and all of the prior administrative medical findings in [the] case record." 20 C.F.R. §404.1520c(b). "In evaluating persuasiveness, the ALJ considers five factors: (i) supportability; (ii) consistency; (iii) the source's relationship with the patient; (iv) the source's specialty; and (v) 'other factors that tend to support or contradict' the opinion." *Shugart v. Kijakazi*, 2022 WL 912777, at *3 (S.D. Tex. Mar. 29, 2022) (quoting 20 C.F.R. § 404.1520c(c)). Among those factors, the most important are supportability and consistency. *Id.* (citing 20 C.F.R. § 404.1520c(b)(2)). "[T]he ALJ is required to explain how he considered the supportability and consistency factors ...." *Id.* (quotation omitted).

Here, the ALJ determined that Plaintiff has the residual functional capacity to perform a full range of work at all exertional levels with certain non-exertional limitations. R.27. When making this determination, the ALJ considered Plaintiff's symptoms, the medical evidence, and prior administrative findings. *Id.* The ALJ found that while Plaintiff's medically determinable impairments could reasonably be expected to cause his symptoms, Plaintiff's statements about the intensity, persistence, and limiting

effects of his limitations were not "entirely consistent with the medical evidence and other evidence in the record." R.29.

The ALJ considered the opinions of a psychological consultative examiner, Dr. Michael Osborne, and two state agency psychological consultants, Drs. Joseph Kahler and Raman Chahal. *See* R.30. Plaintiff's challenges relate to the ALJ's persuasive findings for each of these professionals.

> **B.   The ALJ did not properly evaluate the supportability and consistency of Dr. Osborne's opinion.**

Plaintiff asserts that the ALJ failed to adequately explain why he deemed Dr. Michael Osborne's opinion unpersuasive. Dkt. 9 at 13. Regulations require the ALJ to explain how he considered the supportability and consistency factors when determining the persuasiveness of a medical opinion. *See Shugart*, 2022 WL 912777, at *3 (quoting 20 C.F.R. § 404.1520c(c)). Supportability refers to the relevance of the objective medical evidence and supporting explanations presented by the medical source. 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1). Consistency refers to the extent to which a medical opinion is consistent with the evidence from other medical and nonmedical sources. *Id.* §§ 404.1520c(c)(2), 416.920c(c)(2).

As the Commissioner states, the Court may not reweigh the evidence before the ALJ nor substitute its judgment for that of the ALJ even if it views

the evidence differently.² *See Brown*, 192 F.3d at 496; *see also* Dkt. 11 at 1. Nevertheless, the ALJ must explain his reasoning sufficiently so that the Court can, at the very least, glean his rationale for formulating the RFC. *See Kimberly W. v. Comm'r, Soc. Sec. Admin.*, 2024 WL 4292032, at *4 (N.D. Tex. Aug. 23, 2024), *adopted by* 2024 WL 4296536 (N.D. Tex. Sept. 25, 2024); *see also, e.g., Russano v. O'Malley*, 2024 WL 3614731, at *15 (E.D. La. May 8, 2024) (ALJ's failure to explain whether he found a medical opinion inconsistent with the record precluded meaningful review), *adopted by* 2024 WL 3595605 (E.D. La. July 31, 2024).

Although the Commissioner maintains that the ALJ properly evaluated Dr. Osborne's opinion, that is not what the analysis reflects. The Court agrees with the Commissioner that the ALJ did not err by highlighting the lack of a treatment relationship between Plaintiff and Dr. Osborne. *See* Dkt. 11 at 8 (citing 20 C.F.R. §§ 404.1520c and 416.920c, which notes that ALJs may

---

² The Commissioner also maintains that the "evaluation of the accuracy of the ALJ's analysis of the medical evidence is beyond the scope of judicial review." *See* Dkt. 11 at 10 (citing *Sun v. Colvin*, 793 F.3d 502, 506 (5th Cir. 2015)). But, as Plaintiff notes, *Sun* does not stand for such a proposition. Instead, *Sun* reiterated the substantial evidence standard. *See Sun*, 793 F.3d at 508. Indeed, *Sun* held that the ALJ's evaluation of the medical evidence was not supported by substantial evidence, due to the absence of findings on new evidence, and therefore remanded the case for a rehearing. *See id.* at 513. Here, Plaintiff challenges the ALJ's persuasiveness finding regarding Dr. Osborne's opinion, rather than the accuracy of the ALJ's analysis of medical evidence. Further, the ALJ must build an "accurate and logical bridge" between the evidence and his conclusions. *See Price v. Astrue*, 401 F. App'x 985, 986 (5th Cir. 2010).

9

consider the treatment relationship in evaluating medical opinions). But as the Commissioner also acknowledges, the most important inquiries are supportability and consistency. *See id.* at 8-9. On these key factors, the ALJ's analysis was deficient. The Court therefore declines to reach Plaintiff's alternative grounds for reversal.

### 1. Dr. Osborne's consultative examination and opinions

On December 6, 2021,[3] Dr. Osborne evaluated Plaintiff's mental status. *See* R.373-78. He described Plaintiff as friendly and cooperative, and noted that Plaintiff sustained eye contact and established rapport. *See* R.375-76. Regarding Plaintiff's thought processes, Dr. Osborne reported no evidence of loose associations, flight of ideas, or tangential thinking; Plaintiff exhibited goal-directed, logical thinking, and good abstract thinking, with no delusions. R.376. Nevertheless, Dr. Osborne found that Plaintiff's thought content showed anxiety and paranoid themes. *Id.* Plaintiff reported a "history of hearing noncommand voices and a history of visual hallucinations" since 2014, occurring "pretty much all the time." *Id.* In addition, Dr. Osborne recounted Plaintiff's description of feeling "depress[ed] and unhappy" most of the time.

---

[3] Dr. Osborne's report states December 6, *2022* as the date of his examination. *See* R.378. That date is incorrect because the state agency consultants reviewed and addressed that report on January 5, 2022, citing the date of Dr. Osborne's report on December 6, 2021, *see* R.70-71 (Dr. Joseph Kahler referring to "12/6/21" evaluation in his own January 5, 2022 report). The timeline confirms that Dr. Osborne's examination must have occurred in 2021.

*Id.* Dr. Osborne described Plaintiff's mood as dysphoric, with an affect congruent to his mood. *Id.* Plaintiff was oriented to time, place, person, and situation, though his intelligence was informally assessed as below average. *Id.* Although Plaintiff's memory was generally good, that was not true of Plaintiff's interference memory, as reflected by Plaintiff's ability to recall 3 of 3 objects immediately but 0 of 3 after a 5-minute delay. R.377. According to Dr. Osborne, Plaintiff exhibited good judgment, attention, and concentration, with fair insight. *Id.*

Based on his examination, Dr. Osborne diagnosed Plaintiff with unspecified schizophrenia, auditory and visual hallucinations, and an unspecified mood disorder. R.378. He opined that Plaintiff's prognosis was guarded but could improve with consistent mental health treatment. *Id.* Dr. Osborne also noted that Plaintiff could manage benefit payments appropriately and understood the purpose of filing for benefits. *Id.* Ultimately, Dr. Osborne concluded that Plaintiff would struggle to function in a regular work setting in the following areas: understand, carry out, and remember one-two step and complex instructions; sustain concentration and persist in work-related activity at a reasonable pace; maintain effective social interaction on a consistent and independent basis, with supervisors, co-workers, and the public; and deal with normal pressures in a competitive work setting. *Id.*

      2.      <u>The ALJ did not adequately explain the supportability and consistency of Dr. Osborne's opinions.</u>

The ALJ's supportability explanation relies on his characterization of Plaintiff's mental status exam as "benign," leading him to dismiss Dr. Osborne's opinions about Plaintiff's limitations. *See* R.30. But as Plaintiff asserts, the ALJ largely reiterated Dr. Osborne's normal findings. For example, the ALJ noted Dr. Osborne's observations that Plaintiff was friendly, cooperative, well-groomed, able to drive, sustained eye contact, and established rapport during the exam. R.24. The ALJ highlighted that Plaintiff demonstrated goal-directed, logical thinking, good abstract reasoning, and denied delusions, suicidal or homicidal ideations, and hallucinations at the time. R.24, 25. Furthermore, the ALJ referenced that Plaintiff was oriented to time, place, person, and situation, with generally good memory, concentration, attention, judgment, and fair insight, but noted his interference memory was impaired. R.24. The ALJ concluded that "[d]espite the relatively benign mental status exam," the assessment included diagnoses of schizophrenia, auditory and visual hallucinations, and an unspecified mood disorder and that the exam findings did not support a complete inability to work. R.25.

Other than reiterating Dr. Osborne's findings, the ALJ did not provide any reasoning or explanation as to how those findings are inconsistent with

12

Dr. Osborne's conclusions about Plaintiff's diagnoses or limitations. Critically, too, the ALJ did not acknowledge key abnormal findings, including that Plaintiff's "[t]hought content appeared positive for anxiety and paranoid themes" and Plaintiff's guarded prognosis. R.376, 378. Regarding Plaintiff's hallucinations, the Commissioner emphasizes Plaintiff's denial of hallucinations during the exam. *See* Dkt. 11 at 9. At the same time, the ALJ's opinion acknowledges Plaintiff's history of hearing non-command voices and visual hallucinations, while failing to address Dr. Osborne's categorization of those symptoms as "[p]erceptual abnormalities," or his notations that the hallucinations began in 2014 and that they occur "pretty much all the time."[4] *Id.* Those findings support Dr. Osborne's diagnoses of auditory and visual hallucinations. *See* R.378.

Moreover, the perceptual abnormalities reflected by Plaintiff's hallucinations substantiate Dr. Osborne's opinions that Plaintiff would struggle to sustain concentration and persist in work-related activity at a reasonable pace. *See id.* Yet the ALJ's opinion does not explain how or why

---

[4] Dr. Osborne's notes indicate that Plaintiff reported no hallucinations at the time of the evaluation. Although one sentence suggests that Plaintiff denied past hallucinations, another references Plaintiff's history of hearing voices since 2014. *Compare* R.376 (stating "[p]ast and present auditory, visual, tactile, or olfactory hallucinations were denied"), *with id.* (Plaintiff "reported a history of hearing noncommand voices and a history of visual hallucinations" with an "onset" date of "2014" and occurring "pretty much all the time"). This inconsistency appears to be a typographical error. The ALJ's findings did not address this issue.

13

Dr. Osborne's findings are internally inconsistent with his conclusions about Plaintiff's limitations. *See e.g., Malia Ann B. v. Comm'r of Soc. Sec.*, 2023 WL 2838054, at *6 (N.D.N.Y. Feb. 23, 2023) (reversing where the ALJ "failed to explain his rejection of the consultative examiner's" opinion that appeared to be supported by the examiner's mental status findings), *adopted by* 2023 WL 2623865 (N.D.N.Y. Mar. 24, 2023).

The ALJ's consistency analysis is also problematic. The ALJ states, without elaboration, that Dr. Osborne's "opinion is without substantial support from other evidence, which renders it less persuasive." R.30. That statement does not cite any contrary evidence. *See id.*

Nonetheless, the Commissioner references the ALJ's observation, earlier in the opinion, that no treating or examining physician opined that Plaintiff is disabled, and that the record does not contain opinions from treating or examining physicians indicating that Plaintiff has greater limitations than those determined by the ALJ. *See* Dkt. 11 at 9 (citing R.30). But the treating physicians' records do not conflict with Dr. Osborne's opinion, as they focus on Plaintiff's medication and consistently acknowledge Plaintiff's schizophrenia diagnosis. *See* R.358-66, 369-72, 381, 383. Accordingly, this reasoning lends no support to the ALJ's finding that Dr. Osborne's opinion is inconsistent with other medical records. *See e.g.*, *Wigfall v. Berryhill*, 244 F. Supp. 3d 952, 966

14

(E.D. Mo. 2017) (ALJ erred in discounting a medical opinion merely because Plaintiff could "not offer bolstering opinions from other treating psychiatrists").

Plaintiff also contends that the ALJ's rationale for discounting Dr. Osborne's opinion is illogical. *See* Dkt. 9 at 11-12. As Plaintiff aptly notes, the consultative exam was ordered because the existing medical records provided an insufficient basis for making an informed decision. *See id.* at 12; *see also* 20 C.F.R. § 404.1519a(b). To demand that those records substantiate Dr. Osborne's opinion "is questionable." *See, e.g., Guzman Chavez v. Saul*, 495 F. Supp. 3d 1038, 1045 (D.N.M. 2020) (doubting the logic behind the "Commissioner's decision to require Plaintiff to undergo a consultative examination due to a lack of evidence concerning his mental impairments, only to discount the CE's opinion based on the same lack of evidence concerning mental impairments").

The Commissioner's reliance on Plaintiff's reported daily activities does not bolster the ALJ's analysis. *See* Dkt. 11 at 10. The Commissioner notes Plaintiff's ability to shop, spend time with friends and family, live with others, to drive, handle self-care and personal hygiene, care for pets, prepare meals, watch TV, read, manage funds, use the internet, and handle his own medical care. *See* Dkt. 11 at 10 (citing R.26, 61-62, 283-87, 375-76). Although the ALJ discussed those activities when finding Plaintiff moderately limited in "concentrating, persisting, or maintaining pace," the ALJ never addressed how

15

such activities align with or contradict Dr. Osborne's opinion that Plaintiff would struggle to sustain concentration and persist in work-related activity at a reasonable pace. *See* R.26, 378.

Moreover, Plaintiff's most recent function report and hearing testimony highlight notable limitations in his daily activities. The function report indicates that Plaintiff no longer drives due to discomfort and avoids going out alone because of paranoia, R.312, that he dresses slowly because he cannot focus, and needs reminders to wash clothes and bedsheets and take medication, R.311. *See* R.309-317 (June 11, 2022 Function Report); *see also* R.88 (September 27, 2022 State Agency Examiner Report, noting that Plaintiff does not drive and has problems with personal care and concentration). And at the hearing, Plaintiff testified that he stopped driving two years ago due to frequent hallucinations and hearing voices,[5] which makes him feel paranoid

---

[5] Plaintiff is correct that the ALJ cannot rely on his own lay opinion to conclude that Plaintiff's hallucinations would not affect his ability to work because he could simply "ignore them." *See* Dkt. 9 at 18 (citing R.29). Rejecting Dr. Osborne's opinion left the ALJ with Plaintiff's testimony and details from the mental status examination. Yet the ALJ cited the data selectively, highlighting normal findings, and disregarding both the abnormal findings and Plaintiff's testimony about his hallucinations and associated difficulties with daily activities, including that he stopped driving and struggles with personal care and concentration. *See* R.28, 309-317, 88; *see e.g.*, *Williams v. Comm'r of Soc. Sec.*, 2023 WL 5758876, at *5 (S.D. Miss. Sept. 6, 2023) (ALJ improperly "cherry picked examination findings and interpreted raw medical data" by selectively citing the medical record and relying on his own interpretations of physical exams and x-ray reports). An ALJ "may not rely on his own unsupported opinion as to the limitations presented by the applicant's medical conditions." *Williams v. Astrue*, 355 F. App'x 828, 832 n.6 (5th Cir. 2009) (per curiam).

and nervous. *See* R.46. An ALJ cannot simply disregard this contrary evidence, without explanation. *See, e.g.*, *Brown v. U.S. Comm'r, Soc. Sec. Admin.*, 2020 WL 2120483, at *15 (W.D. La. Mar. 23, 2020) (finding that the ALJ selectively cited evidence of the plaintiff's reported daily activities to support her conclusion, while ignoring contrary evidence), *adopted by* 2020 WL 2119385 (W.D. La. May 4, 2020); *Quintanilla v. Astrue*, 619 F. Supp. 2d 306, 319 (S.D. Tex. 2008) (rejecting the ALJ's decision to discount a treating physician's opinion, including because the ALJ overstated the evidence regarding Plaintiff's activities of daily living).

Accordingly, the ALJ did not adequately explain the supportability and consistency of Dr. Osborne's opinions. *See* 20 C.F.R. § 404.1520c(c)(1), (2). This constitutes legal error.

### 3. The ALJ's errors were prejudicial

Even if the ALJ erred when evaluating the persuasiveness of the medical opinions, remand would be unwarranted unless Plaintiff shows that the errors were prejudicial. *See Jones v. Astrue*, 691 F.3d 730, 734-35 (5th Cir. 2012). "To establish prejudice, a claimant must demonstrate that he or she 'could and would have adduced evidence that might have altered the result.'" *Carey v. Apfel*, 230 F.3d 131, 142 (5th Cir. 2000) (quoting *Kane v. Heckler*, 731 F.2d 1216, 1220 (5th Cir. 1984)).

17

On this issue, Plaintiff argues that Dr. Osborne's opinions, if properly evaluated and deemed persuasive, likely would have changed the outcome. *See* Dkt. 9 at 14. Relying on the Commissioner's Program Operations Manual System ("POMS"), Plaintiff suggests that the limitations found by Dr. Osborne would be incompatible with the demands of any work. *See id.* at 13 (citing POMS DI 25020.010(B)(2)(a); 25020.010(B)(3)(i)).

The POMS is a policy manual rather than a binding rule. *See e.g.*, *Schofield v. Saul*, 950 F.3d 315, 317 (5th Cir. 2020) (describing the POMS as "subregulatory-guidance documents"). Nevertheless, it "may be viewed as binding on an ALJ in a case that falls squarely within one of the provisions." *Bettery v. Comm'r of Soc. Sec.*, 2015 WL 4742296, at *7 n.9 (W.D. La. Aug. 10, 2015); *see also Gonzalez v. O'Malley*, 2024 WL 4328774, at *4 n.2 (W.D. Tex. Aug. 15, 2024) (quoting *Bettery*), *adopted by* 2024 WL 4132672 (W.D. Tex. Sept. 10, 2024). Accordingly, the POMS is persuasive if one of its provisions applies.

Plaintiff accurately notes that the POMS details a "strict" requirement for unskilled work. *See* Dkt. 9 at 13. This includes the ability to complete a "normal workday and workweek without interruptions from psychologically based symptoms" and to perform at a "consistent pace without an unreasonable number and length of rest periods." *See* Social Security Administration, Program Operations Manual System (POMS), DI 25020.010(B)(3)(i), *available at* https://perma.cc/E4NH-F54W (last visited Mar. 24, 2025); *see also, e.g.*,

18

*Salazar v. Kijakazi*, 2022 WL 4365864, at *2, 7 (applying same provision to claim with onset date of November 21, 2018). The ALJ limited Plaintiff to unskilled work, so this provision applies. *See* R.32.

Under the POMS provision, Dr. Osborne's opinion that Plaintiff would have trouble sustaining concentration and persisting in work-related activities at a reasonable pace indicates that Plaintiff may be unable to meet the demands of unskilled work. *See* R.378. At a minimum, Dr. Osborne's opinion, if credited, could support including further RFC restrictions that eliminate the existence of jobs that Plaintiff can perform. This is enough to show prejudice warranting remand.

## Conclusion

For the foregoing reasons, it is **ORDERED** that the decision of the Commissioner of Social Security be **REVERSED**, and that matter be **REMANDED** for further administrative proceedings consistent with this opinion.

Signed on March 24, 2025, at Houston, Texas.

_____
Yvonne Y. Ho
United States Magistrate Judge